IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  KAY F. EDLER, | : | Bky. No. 08-16960 (ELF) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | Chapter 7 |
| | : | |

# M E M O R A N D U M

**I.**

Presently before the court in the chapter 7 bankruptcy case of Kay F. Edler ("the Debtor") is the Motion for Relief from the Automatic Stay ("the Motion") filed by Larry Yogel ("Mr. Yogel").[1]

On September 23, 2008, prior to the commencement of this bankruptcy case, Mr. Yogel obtained a $655,904.19 money judgment ("the Judgment") against the Debtor and her husband, James Edler ("Mr. Edler"), in the Court of Common Pleas, Montgomery County ("the C.P. Court").  On September 25, 2008, Mr. Edler, on his own behalf, and purportedly on behalf of the Debtor, appealed the Judgment to the Pennsylvania Superior Court ("the State Court Appeal").[2]  On October 23, 2008, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy

---

[1] Mr. Yogel filed the Motion on February 23, 2009.  See Docket Entry No. 28. The Debtor filed a response on March 6, 2009.  See Docket Entry No. 31.  A hearing on the Motion was held and concluded on March 18, 2009.  At the court's request, both parties filed supplemental memoranda on March 25, 2009.  See Docket Entry Nos. 34 & 35.  Mr. Yogel filed a second supplemental memorandum on March 30, 2009.  See Docket Entry No. 35.

[2] The C.P. Court entered the judgment against the Debtor and Mr. Edler as a discovery sanction.  See Motion ¶4 and Exhibit "B" thereto.  The issue on appeal appears to be whether the C.P. Court abused its discretion in entering what it styled as a "default judgment."  See Motion, Exhibit B.

1

Code in this court.

The Debtor's bankruptcy filing stayed the State Court Appeal. See 11 U.S.C. §362(a); Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir. 1982). Mr. Yogel seeks relief from the automatic stay to permit the State Court Appeal to proceed. He argues that this will be an "asset" case and that case administration (in particular, the claims allowance process) will be facilitated if relief from the automatic stay is granted to permit the validity of the Judgment to be finally determined through the state court appellate process. He maintains this contention notwithstanding the recent filing of a Report of No Distribution ("the NDR") by the chapter 7 trustee ("the Trustee").

For the reasons set forth below, I will deny the Motion without prejudice to Mr. Yogel's right to re-list the Motion if certain events occur in the administration of this bankruptcy case.

## II.

There are two (2) "moving parts" related to the Motion. The first is the State Court Appeal. The other is the adversary proceeding ("the AP") that Mr. Yogel initiated in this court on February 2, 2009 (Adv. No. 09-036). In the AP, Mr. Yogel requests a determination that the Debtor's debt[3] to him (i.e., the debt that has been reduced to Judgment) is nondischargeable under 11 U.S.C. §523(a)(2), (4) and/or (6).

It is common practice for creditors whose state court litigation has been stayed by a bankruptcy filing and who assert that the subject debt is nondischargeable under §523(a)(2), (4)

---

[3] I use the term "debt" here in its technical sense. The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. §101(12). The term "claim" is defined as a right to payment "whether or not such right is . . . disputed [or] undisputed." Id. §101(5).

2

or (6), to seek: (1) relief from the automatic stay for "cause" under 11 U.S.C. §362(d) to complete the state court litigation and (2) deferral of the bankruptcy court nondischargeability proceeding until the state court proceedings have concluded.[4] Here, however, Mr. Yogel does not seek relief from the stay based on the interrelationship of the state court action and the bankruptcy court nondischargeability proceeding. Instead, he contends that "cause" for relief from the automatic stay exists based on considerations relating to the potential administration of the bankruptcy estate assets.[5]

Mr. Yogel's initial argument, made before the Trustee filed the NDR, may be summarized as follows:

> (1) the Debtor's bankruptcy schedules disclose that there is non-exempt equity in the Debtor's real estate that should be administered;
>
> (2) once there are assets available for distribution, Mr. Yogel will file a proof of claim based upon the Judgment;
>
> (3) the Debtor can be expected to object to the proof of claim and seek relief from the automatic stay to prosecute the State Court Appeal to prevent allowance of the claim based on the application of res judicata, collateral estoppel and/or the Rooker-Feldman doctrine;[6] and

---

[4] See, e.g., In re Chan, 355 B.R. 494, 497-502 (Bankr. E.D. Pa. 2006) (denying relief from the stay after discussing the relevant considerations for determining whether "cause" exists under §362(d)); see also In re Glunk, 342 B.R. 717, 739-42 (Bankr. E.D. Pa. 2006) (granting relief from the stay).

[5] Mr. Yogel is careful to limit his request to relief solely for the purpose of resolving the State Court Appeal. He agrees that relief should not be granted to permit execution on the Judgment. See Motion ¶18.

[6] By his citation of In re Wilson, 116 F.3d 87 (3d Cir. 1997), see Motion ¶20, Mr. Yogel appears to assume that if he files a proof of claim and the Debtor objects to it, "cause" will exist under 11 U.S.C. §362(d) to grant the Debtor relief from the stay to prosecute the State Court Appeal. I express no view at this time whether Wilson is controlling in the circumstances presented in this case.

>   (4) because it is likely that the Debtor will be granted relief from the automatic stay in the future to resume prosecution of the State Court Appeal, it would expedite and facilitate the Trustee's eventual distribution of assets to grant Mr. Yogel relief now, rather than later, (i.e., after the Debtor objects to Mr. Yogel's proof of claim).

Essentially, Mr. Yogel argued initially that the benefits to the estate of granting relief from the stay outweigh the burdens to the Debtor of resuming litigation of the State Court Appeal, even though there has been no determination that the underlying debt is nondischargeable. See generally Chan, 355 B.R. at 498-500 (decision to grant stay relief to an unsecured creditor involves a balancing of competing interests).[7]

The Debtor responded by arguing that the court should not consider granting relief from the stay to facilitate bankruptcy case administration unless and until it is clear that the Trustee will be raising an estate. At the hearing, the Debtor suggested that, in light of the present state of the real estate market, it is extremely unlikely that the Trustee will be able to do so. The Debtor argued further that stay relief should not be granted to permit further litigation in the state court until the bankruptcy court has determined that the underlying debt is nondischargeable.

Following the hearing and after the submission of the parties' post-hearing memoranda, the Trustee filed a "Report of No Distribution" ("the NDR") on March 26, 2009. See Docket Entry No. 35. In the NDR, the Trustee states "I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law." Id.

---

[7] Mr. Yogel also posits that if stay relief is granted, the burden on the Debtor is minimal because: (1) the state court litigation is on appeal, where the level of participation of the party is significantly less than at trial; and (2) the appeal of the Debtor's husband is not stayed and there is minimal burden in having their joint counsel address any appellate issues that may be unique to the Debtor.

Thus, the Trustee has reported that this is a "no-asset" case.[8]

### III.

#### A.

The initial burden of proof in this matter lies with Mr. Yogel. As one court has explained,

> Initially, on a motion to lift or modify the automatic stay, the burden of proof is a shifting one. That is, section 362(d)(1) requires an initial showing of 'cause' by the movant, while section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property. . . .' If the movant however fails to make an initial showing of cause, courts have denied relief without requiring any showing from the debtor that it is entitled to continued protection.

In re Telegroup, Inc., 237 B.R. 87, 91 & n.3 (Bankr. D.N.J. 1999) (italics in original) (citations omitted) (quoted in In re Schellhamer, 2009 WL 222427, at *4 (Bankr. M.D. Pa. Jan. 29, 2009)).

Mr. Yogel's initial legal theory in this matter was based on the factual premise that the Trustee will (or at least is likely to) administer an estate. That premise appears to be unfounded in light of the Trustee's NDR. Therefore, based on his initial theory, Mr. Yogel has not met his initial burden. However, after the filing of the NDR, Mr. Yogel filed a second supplemental memorandum of law, in which he argues that the Motion should be granted notwithstanding the NDR.

Mr. Yogel now asserts that he might file an objection to the NDR within the next thirty (30) days, see Fed. R. Bankr. P. 5009 (providing thirty (30) days for a party in interest to object

---

[8] I may take judicial notice of the content of the documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa., Aug. 26, 1998). See also In re Indian Palm Associates, Ltd. 61 F.3d 197, 205 (3d Cir. 1995).

to a trustee's final report), as well as take other action to try to compel the sale of the Debtor's assets for distribution in the bankruptcy case. He contends that whether or not he files an objection and notwithstanding the NDR, the Motion should be granted,. Respectfully, I disagree with both alternatives of Mr. Yogel's supplemental argument.

**B.**

**1.**

Mr. Yogel first asserts, on the one hand, that if he does not object to the NDR, then the bankruptcy case will be closed "as of course," the automatic stay will terminate and that no materially greater burden will be imposed on the Debtor by lifting the stay now as opposed to waiting approximately thirty (30) days, when the stay will terminate anyway. See Yogel Second Supplemental Memorandum of Law at 2. Presumably, Mr. Yogel bases his argument on 11 U.S.C. §362(c)(2), which provides that the stay of most acts under §362(a) terminates upon the earlier of: (1) the closing of the case, (2) dismissal of the case, or (3) the entry of the chapter 7 discharge.

This argument is flawed because Mr. Yogel's assumption that this bankruptcy case will be "closed" after the NDR objection period expires is incorrect. Mr. Yogel overlooks the pendency of the nondischargeability adversary proceeding, which will keep the case open. Thus, it is not clear that the automatic stay will terminate simply because no objection is filed to the NDR.

The issue, however, is more complex.

Although the pending adversary proceeding will cause this case to remain open after the

6

expiration of the NDR objection period, Mr. Yogel may be correct that the automatic stay will expire in the near future. The automatic stay will expire because the Debtor's discharge should be entered soon. The rules of court state that if no objection to discharge is filed and the deadline for filing such objection expires, subject to certain other conditions, "the court shall forthwith grant the discharge." Fed. R. Bankr. P. 4004(c)(1).[9] The filing of a complaint to determine the dischargeability of a particular debt is not one of the grounds for deferring the entry of the discharge order. Id.[10] Thus, in this case, it is likely that the discharge will be entered shortly and the automatic stay will terminate. See 11 U.S.C. §362(c)(2).[11]

Even so, the discharge injunction may replace the restraint of the automatic stay. See 11 U.S.C. §727(b) (discharge applies to all debts that arose before the order for relief); id. §524(a)(2) (discharge operates as an injunction against, inter alia, continuation of action to collect a discharged debt). Thus, unless Mr. Yogel prevails in the pending §523(a)

---

[9] The other reasons for deferring the entry of the discharge order include, inter alia: (1) the pendency of a motion to dismiss under §707, the pendency of a motion for extension of time to file a motion to dismiss under Rule 1017(e), the debtor's failure to pay the filing fee in full, an unresolved presumption of undue hardship under §524(m) in connection with a reaffirmation agreement, the pendency of a motion to delay discharge for failure to file all tax documents under §521(f); and (2) the Debtor's failure to file the statement regarding completion of a course in personal financial management as required by Rule 1007(b)(7).

[10] I note that the entry of the discharge order does not prejudice the creditor's rights in the pending §523(a) dischargeability proceeding. See 11 U.S.C. §727(b) (excepting §523(a) from the scope of the discharge).

[11] My review of the case docket suggests that none of the conditions for deferring the entry of discharge under Rule 4004(c) have arisen in this case. I note that there has been a practice in the Clerk's office in this district of deferring the entry of discharge if an adversary proceeding requesting a determination of the dischargeability of a debt under §523(a) is filed, even in the absence of any authority under Rule 4004(c). Perhaps that is why the discharge order has not already been entered in this case. However, for purposes of deciding the Motion, I will assume that the case will be governed by the rules and that the Debtor's discharge likely will be entered in the near future.

dischargeability proceeding, resumption of his litigation against the Debtor in state court would run afoul of the discharge injunction. In these circumstances, creditors typically forbear from resuming collection activity until resolution of a pending dischargeability proceeding in the bankruptcy court, especially proceedings based on §523(a)(2)(4) or (6), over which the bankruptcy court has exclusive jurisdiction. See id. §523(c). To the extent that a creditor might contend that it has the right to proceed in state court after termination of the automatic stay because the discharge injunction is inapplicable to the debt whose dischargeability is as yet undetermined,, it would be within the bankruptcy court's power to restrain the creditor from proceeding in state court pending the conclusion of the dischargeability proceeding[12] and, generally speaking, it is difficult to envision the circumstances in which a bankruptcy court would not exercise that power.

    The bottom line here is that the impending entry of the discharge order and the possible termination of the automatic stay in the near future, by themselves, are not compelling reasons for terminating the automatic stay at this time. The Debtor's interest in obtaining a resolution of the dischargeability of the subject debt outweighs the interest of Mr. Yogel in resuming litigation against the Debtor in the state court.[13]

---

[12]    See 11 U.S.C. §105(a).

[13]    Neither party has contended that completion of the State Court Appeal is necessary or appropriate before the nondischargeability AP is decided in the bankruptcy court.

**2.**

Alternatively, Mr. Yogel asserts that if he <u>does</u> object to the NDR, "considerations underlying this Motion for Relief will be the same as they were before the Trustee's Report was filed." Yogel Second Supplemental Memorandum of Law at 2. That statement is not accurate.

Prior to the NDR, there was a reasonable basis to believe that the Trustee might administer assets in this case because the Debtor's bankruptcy schedules disclosed the existence of non-exempt equity in her real estate. It is now much more likely that no assets will be distributed in this case.[14] As long as the prospects of an estate being administered are dim, I find that the Debtor's burden of defending the State Court Appeal, prior to a determination that the subject debt is nondischargeable, outweighs any conditional, countervailing benefit to the bankruptcy estate.

Thus, based on the rationale for relief from the automatic stay put forward by Mr. Yogel, the filing of the NDR resolves the Motion. Mr. Yogel is not entitled to relief from the automatic stay.[15]

---

[14] Without prejudging the merits of the potential objections to the NDR that Mr. Yogel contemplates filing, I note that bankruptcy courts usually give some deference to a trustee's business judgment. <u>See generally</u> <u>In re Martin</u>, 91 F.3d 389, 395 (3d Cir. 1996) (deference to the trustee's business judgment regarding settlements); <u>In re Thinking Machs. Corp.</u>, 182 B.R. 365, 368 (D. Mass.) (referring to "the high degree of deference usually afforded purely economic decisions of trustees"), <u>rev'd on other grounds</u>, 67 F.3d 1021 (1st Cir. 1995).

[15] I recognize the possibility that Mr. Yogel may object successfully to the NDR or that some other development in the case will improve materially the prospect that assets will be distributed to creditors. Therefore, the order denying bankruptcy will permit Mr. Yogel to re-list the Motion if there is a material change in circumstances. If that occurs, it may be necessary to resolve the issues left undecided at this time. <u>See</u> n.6, <u>supra</u>.

Date: April 9, 2009

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**